No. 14-3102

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

NANCY M. McLAUGHLIN,

Plaintiff-Appellant,

vs.

CNX GAS COMPANY, LLC,

Defendant-Appellee.

On Appeal from the United States District Court
for the Northern District of Ohio at Akron

_____

## BRIEF OF APPELLANT
## NANCY M. McLAUGHLIN

_____

Robert J. Tscholl (0028532)
400 South Main Street
North Canton, Ohio 44720
E-mail:   btscholl740@yahoo.com
Phone:       (330) 497-8614
Fax:         (330) 497-8613
Counsel for Appellant
Nancy M. McLaughlin

James F. Mathews (0040206)
BAKER, DUBLIKAR, BECK,
WILEY & MATHEWS
400 South Main Street
North Canton, Ohio 44720
Email:    mathews@bakerfirm.com
Phone:       (330) 499-6000
Fax:         (330) 499-6423
Counsel for Appellant
Nancy M. McLaughlin

*Oral Argument Requested*

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS</u><br><u>AND FINANCIAL INTEREST</u>

Pursuant to 6th Cir. R. 26.1, Plaintiff-Appellant, Nancy M. McLaughlin, Trustee of the Nancy M. McLaughlin Living Trust Dated February 15, 2006, makes the following disclosures:

1.  Is said party a subsidiary or affiliate of a publicly-owned corporation? If that answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

    No.

2.  Is there a publicly-owned corporation, not a party to the appeal, that has a financial interest in the outcome?   If the answer is YES, list the identity of such corporation and the nature of the financial interest:

    No.


s/James F. Mathews                                    March 24, 2014
(Signature of Counsel)                                Date


i

# **TABLE OF CONTENTS**

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL
INTEREST  ................................................................................i

TABLE OF CONTENTS  ................................................... ii

TABLE OF AUTHORITIES  ...............................................iv

STATEMENT REGARDING ORAL ARGUMENT  ..................................... viii

I.    JURISDICTIONAL STATEMENT  ..............................................1

II.   STATEMENT OF THE ISSUES PRESENTED FOR APPEAL  ...............1

III.  STATEMENT OF THE CASE  ...................................................2

IV.   STATEMENT OF THE FACTS  .................................................3

V.    SUMMARY OF ARGUMENT  ...................................................9

VI.   STANDARD OF REVIEW  ....................................................11

VII.  ARGUMENT  .....................................................................13

A.    THE   DISTRICT   COURT   ERRED   IN   GRANTING   THE
APPELLEE'S MOTION FOR JUDGMENT ON THE PLEADINGS,
DETERMINING THAT THE RELEASE OF AN OIL AND GAS
LEASE QUALIFIES AS A "TITLE TRANSACTION" UNDER
OHIO LAW. .....................................................................13

B.    THE   DISTRICT   COURT   ERRED   IN   GRANTING   THE
APPELLEE'S MOTION FOR JUDGMENT ON THE PLEADINGS,
INASMUCH AS THE OIL AND GAS INTERESTS CLAIMED BY
APPELLEE   HAD   PREVIOUSLY   BEEN   EXTINGUISHED
THROUGH THE PROCESS OF A TAX FORECLOSURE SALE.  .......27

C.    THE DISTRICT COURT ERRED IN GRANTING THE
      APPELLEE'S MOTION FOR JUDGMENT ON THE PLEADINGS,
      BECAUSE APPELLEE'S OIL AND GAS INTERESTS HAD BEEN
      ABANDONED UNDER THE NOTICE AND RECORDING
      PROVISIONS OF THE OHIO DORMANT MINERAL ACT, AS
      AMENDED JUNE 30, 2006.    ....................................................................31

VIII.  CONCLUSION   ...........................................................................34

CERTIFICATE OF COMPLIANCE   ....................................................36

CERTIFICATE OF SERVICE   ............................................................36

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

      Nancy M. McLaughlin v. CNX Gas Company, LLC
      *U.S. District Court, Northern District of Ohio*
      Case No. 5:13-cv-0150 ....................................................................37

# <u>TABLE OF AUTHORITIES</u>

Cases                                                                                          Page

<u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1950 (2009)    ....................................................14

<u>Back v. The Ohio Fuel Gas Co.</u> (1953), 160 Ohio St. 81
              ............................................................... 10, 17, 18-20, 22, 23, 25, 26, 27

<u>Bassett v. Nat'l Collegiate Athletic Ass'n.</u>, 528 F. 3d 426, 430 (6th Cir., 2008).....12

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007)    ........................................14

<u>Bell v. JP Morgan Case Bank</u> (June 28, 2006), E.D. Mich.
    Case No. 06-11550    ...........................................................................11, 13

<u>Bender v. Morgan</u>, Columbiana C.P. Case No. 2012-CV-378    ...........................23

<u>Blackstone v. Moore</u>, Monroe C.P. Case No. 2012-166 (Jan. 22, 2014) .................5

<u>Davis v. Consolidation Coal Co.</u>, Harrison C.P. No. CVH-2011-0081    ..............25

<u>Dodd v. Croskey</u>, Harrison C.P. Case No. CVH-2011-0019 (Oct. 29, 2012),
    2013-Ohio-4257 (7th Dist.) ..........................................................9, 10, 21, 27

<u>Feichtner v. Roman Catholic Archdiocese of Cincinnati</u> (Mar. 7, 2006),
    S.D. Ohio Case No. 1:05-CV-00398    ....................................................12, 13

<u>Fioresi v. State Farm Ins.</u> (1985), 26 Ohio App. 3d 203    ......................................15

<u>Gudenas v. Cervenik</u> (Feb. 22, 2010), N.D. Ohio No. 1:09 CV 2169,
    2010 U.S. Dist. LEXIS 24487    ....................................................................14

<u>Howard v. Dor El Realty</u>, 20 Ohio App. 2d 191 (1969)    ......................................28

<u>Hunter v. Grier</u>, 173 Ohio St. 158 (1962)    ....................................................12, 29

<u>Hutter v. Bennett</u> (Oct. 21, 1999), N.D. Ohio Case No. 3:99CV7157    .................12

In re. National Tube (1950), 98 N.E. 2d 78 .............................................................30

Jefferson Golf and Country Club v. Leonard, 2011-Ohio-6829, P. 19, 25, 31
(10th Dist.) ...........................................................................................21

Jelovsek v. Bredesen, 545 F. 3d 431 (6th Cir., 2008) ............................................11

Johnson v. North Union School Dist. (May 26, 2000), Union App. No.
14 2000 07, 2000 Ohio App. LEXIS 2247 ) ...............................................15

Kramer v. PAC Drilling Oil & Gas (Dec. 29, 2011), 2011-Ohio-6750 ..............23

Marty v. Dennis, Monroe C.P. 2012-203 (Apr. 11, 2013) .......................................5

Ohio Asphalt v. Ohio Dept. Industrial Relations (Mar. 21, 1989),
Knox App. No. 88-CA-39, 1989 Ohio App. LEXIS 1111 ........................15

Performing Arts School of Toldeo v. Wilkins, 104 Ohio St. 3d 284,
2004-Ohio-6389 ...........................................................................................21

Roger Miller Music, Inc. v. Sony, 477 F. 3d 383 (6th Cir., 2007) .......................11

Shannon v. Householder, Jefferson C.P. Case No. 12 CV 226 (July 17, 2013)
...............................................................................................................5, 26

Slaughter v. Fitzgerald, 66 Ohio App. 53 (1939) ...........................................29, 30

Waldock v. Unknown Heirs of Wagner (June 7, 1991), Erie App. No. E 89 53,
1991 Ohio App. LEXIS 2599 ...................................................................20

Wellington Resource Group v. Beck Energy (Sept. 20, 2013),
S.D. Ohio No. 2:12 CV 104, 2013 U.S. Dist. LEXIS 134838
...................................................................................... 10, 24-25, 26, 27

Wendt v. Dickerson, Tuscarawas C.P. Case No. 2012 CV 02 0135
(Feb. 21, 2013) .............................................................................................8

<u>Ziegler v. IBP Hog Market</u>, 249 F. 3d 509 (6th Cir. 2001) ...........................11, 13

Other                                                                    Page

Fed. R. App. P. 32(a)(5) ........................................................36

Fed. R. App. P. 32(a)(6) ........................................................36

Fed. R. App. P. 32(a)(7)(B) ....................................................36

Fed. R. App. P. 32(a)(7)(B)(iii) ..............................................36

Fed. R. App. P. 34(a) ........................................................ viii

Fed. R. Civ. P. 12(b)(6) ....................................................11, 13

Fed. R. Civ. P. 12(c) .......................................................11, 13

Ohio Civ. R. 12(B)(6) .......................................................14, 15

Ohio R.C. 323.13 .................................................................28

Ohio R.C. 5301.47(F) ........................................................20, 26

Ohio R.C. 5301.56 .......................................................... Passim

Ohio R.C. 5303.01 ...............................................................15

Ohio R.C. 5713.04 ...............................................................28

Ohio R.C. 5723.13 ...............................................................30

28 U.S.C. §2201 .................................................................15

28 U.S.C. §1291 ..................................................................1

6 Cir. R. 26.1 ....................................................................i

6 Cir. R. 34(a)  ................................................................................. viii

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Fed. R. App. P. 34(a) and 6 Cir. R. 34(a), appellant, Nancy M. McLaughlin, Trustee, requests that oral argument be heard by this Court in connection with this appeal.   The facts (including the analysis of title acquired through a county Sheriff's tax sale) essential to the determination of the significant property rights issues involved in this case are unique, and oral argument will provide the opportunity to more fully advise the Court on such matters, as well as the opportunity to respond to any questions the Court may have regarding these proceedings.   Accordingly, appellant believes that oral argument would aid this Court in its consideration of the peculiar facts and operative law, for purposes of rendering its decision herein.

## I.  **JURISDICTIONAL STATEMENT**

This matter represents an appeal from a final judgment rendered in the District Court, taken by the appellant pursuant to 28 U.S.C. §1291.

## II.  **STATEMENT OF THE ISSUES PRESENTED FOR APPEAL**

The primary issue in this appeal involves the proper application of the Ohio Dormant Mineral Act (also referred to herein as the "DMA" or "Act").   Under Ohio law, severed oil and gas interests (meaning those held by one other than the owner of the surface estate) are merged with the surface ownership when the interest has not been used or preserved in a fashion recognized by law.   R.C. 5301.56.

The District Court erred in its interpretation of a "release" of an oil and gas lease as a "title transaction," protecting the appellee's interests from being declared abandoned by operation of law.   Further, this case requires analysis of the title which one receives out of a county Sheriff's tax sale.   Appellant maintains that such title represents a new and independent title which, in this case, eliminated any prior, severed title interests.   Finally, this case also involves a claim presented by the appellant pursuant to the current, amended version of the DMA.   Appellant followed the notice and recording provisions of the Act, and the appellant's oil and gas rights attendant to such procedure should have been given legal recognition.

1

## III.    STATEMENT OF THE CASE

The appellant, Nancy M. McLaughlin, Trustee of the Nancy M. McLaughlin Living Trust Dated February 15, 2006 ("McLaughlin" or "property owner"), filed her complaint in this case on June 13, 2013, in the Carroll County, Ohio Court of Common Pleas.    (Complaint, RE 1-1, Page ID # 8-35).    Appellee, CNX Gas Company, LLC ("CNX"), timely removed the action to the District Court for the Northern District of Ohio, on the basis of diversity of citizenship.    Further, appellee filed an answer, together with a counterclaim, on July 18, 2013. (Answer and Counterclaim, RE 3, Page ID # 42-56).    Appellant timely answered the counterclaim on August 7, 2013.    (Answer to Counterclaim, RE 5, Page ID # 128-143).

The appellee filed a motion seeking judgment on the pleadings in this case. (Motion for Judgment on the Pleadings, RE 8, Page ID #156-159).    That motion was supported by a Memorandum and a series of Exhibits.    (Memorandum, RE 8-1, Page ID # 160-195).    The property owner opposed the motion, because the recorded instruments relied upon by the appellee do not represent "title transactions" or "Savings Events," for purposes of the Ohio Dormant Mineral Act. (Memorandum In Opposition, RE 13, Page ID # 230-254).    Appellant further maintained that the motion for judgment on the pleadings was without merit, since

the previously-severed oil and gas interests which appellee asserted had been extinguished as a function of the title issued from a 1994 county tax foreclosure sale.

The District Court granted the appellee's motion for judgment on the pleadings on December 13, 2013.  (Memorandum Opinion and Order, RE 19, Page ID # 473-479).   A final judgment was then entered on December 30, 2013, rendering judgment in favor of appellee.   (Marginal Entry Order, RE 21, Page ID # 484).

This appeal was timely filed on January 28, 2014, bringing this matter before this Court for review of the record and judgment rendered thereon. (Notice of Appeal, RE 22, Page ID # 485-486).

## IV.   <u>STATEMENT OF THE FACTS</u>

It is undisputed that the appellant McLaughlin owns a parcel of real property located in Lee Township, Carroll County, Ohio.   The property is comprised of approximately 143 acres, and is identified by the *single* Parcel Number 17-00128.000, under the Carroll County Permanent Parcel Numbering system. (Complaint, RE 1-1, ¶4, Page ID #9; CNX Answer, RE 3, ¶4, Page ID #42).   It is further undisputed that the property owner first obtained her interest in the property by way of a Sheriff's Deed recorded on May 25, 1994.   (Counterclaim, RE 3, ¶12,

Page ID # 47; Exhibit G, RE 3-7, Page ID # 83-85; Answer to Counterclaim, RE 5, ¶11, Page ID #130).   Appellant McLaughlin's spouse is deceased, and the property interests first acquired through the Sheriff's Deed are presently held in the name of the appellant trustee.   The Sheriff's Deed was, itself, the product of a delinquent tax lien foreclosure proceeding undertaken by the Carroll County Treasurer; namely, *John R. Yeager, Treasurer of Carroll County, Ohio v. International Environmental Services Corp. et al.*, Carroll C.P. Case No. 20399-94-23(E).   (See, Deed Exhibit G, RE 3-7, Page ID # 83-85).

Appellee's predecessor, Consolidation Coal Company, previously owned the parcel of property at issue.   (Counterclaim, RE 3, ¶1, Exhibit A, Page ID # 45, 57). The oil and gas rights pertaining to the property were severed when Consolidation executed a deed to Conoco, Inc., by virtue of a reservation of the mineral interest set forth in that deed.   The deed, with reservation, was recorded on or about January 3, 1985, recorded as instrument number 76203 in Volume 216, Page 532 in Carroll County.   (Complaint, RE 1-1, ¶5, Exhibit B, Page ID # 9, 23; CNX Answer, RE 3, ¶5, Page ID # 42).   Consolidation purported to convey the reserved oil and gas rights to the appellee CNX through a quit-claim deed, recorded September 29, 2011, as instrument number 201100005646, in Volume 75, Page 375 in Carroll County.   (Complaint, RE 1-1, ¶7, Exhibit C, Page ID # 9,

26; Answer, RE 3, Page ID # 42).   Appellant maintains in this action that, by the time of the September 29, 2011 deed, Consolidation possessed no oil and gas rights to convey to CNX.   The previously-severed interests had lapsed, by non-use or non-preservation, and had merged with appellant's ownership of the surface.

The appellant filed this action seeking declaratory relief and to quiet title to the oil and gas interests in her real property.   The claims involve, in part, application of the Ohio Dormant Mineral Act.   The Ohio General Assembly enacted the initial version of the DMA effective March 22, 1989.   That version, which remained in effect until June 30, 2006, provided for the "automatic" or self-executing merger of severed mineral interests in the name of the surface owners, when there was a 20-year period of non-use or non-preservation. Blackstone v. Moore, Monroe C.P. Case No. 2012-166 (Jan. 22, 2014); Marty v. Dennis, Monroe C.P. 2012-203 (Apr. 11, 2013); Shannon v. Householder, Jefferson C.P. Case No. 12 CV 226 (July 17, 2013).   The statute provided for six forms of use or preservation, commonly referred to as "Savings Events," which, if demonstrated by the "holder" of a severed mineral interest operate to prevent abandonment and merger.   The 1989 statute provided as follows, in pertinent part:

**5301.56    Abandonment and preservation of mineral interests**

(A)    As used in this section:

5

(1)   "Holder" means the record holder of a mineral interest, and any person who derives his rights from, or has a common source with, the record holder and whose claim does not indicate, expressly or by clear implication, that it is adverse to the interest of the record holder.

. . .

**(B)(1)   Any mineral interest held by any person, other than the owner of the surface of the lands subject to the interest, shall be deemed abandoned and vested in the owner of the surface, if none of the following applies**:

(a)   The mineral interest is in coal, or in mining or other rights pertinent to or exercisable in connection with an interest in coal, as described in division (E) of section 5301.53 of the Revised Code;

(b)   The mineral interest is held by the United States, this state, or any political subdivision, body politic, or agency of the United States or this state, as described in division (G) of section 5301.53 of the Revised Code;

**(c)   Within the preceding twenty years, one or more of the following has occurred**:

(i)   The **mineral interest has been the subject of a title transaction** that has been filed or recorded in the office of the county recorder of the county in which the lands are located;

(ii)   There has been **actual production or withdrawal of minerals** by the holder from the lands, **from lands covered by a lease** to which the mineral interest is subject, . . . or, in the case of oil or gas, from lands pooled, unitized, or included in unit operations, under

6

sections 1509.26 to 1509.28 of the Revised Code, in which the mineral interest is participating, . . .;

(iii)   The **mineral interest has been used in underground gas storage** operations by the holder;

(iv)   A **drilling or mining permit has been issued to the holder**, . . .;

(v)   A **claim to preserve the mineral interest has been filed** in accordance with division (C) of this section;

(vi)   In the case of a separated mineral interest, a **separately listed tax parcel number has been created for the mineral interest** in the county auditor's tax list and the county treasurer's duplicate tax list in the county in which the lands are located.

(2)   A mineral interest shall not be deemed abandoned under division (B)(1) of this section because none of the circumstances described in that division apply, until three years from the effective date of this section.

. . .   (Emphasis added).

Effective Date: 03-22-1989.   In her complaint, the property owner alleged, in part:

9.   Following the recording of the deed, with reservation of mineral interest, on January 3, 1985 (Exhibit "B"), the severed mineral interest in the Appellant's Property was extinguished by operation of R.C. 5301.56.   A period of twenty years passed without any production of oil or gas from the Property, and the mineral interest was not the subject of a title transaction under the Uniform Marketable Title Act.

10.   Further, none of the conditions (savings events) set forth

7

in R.C. 5301.56 (as enacted under SB 223) were satisfied in order to preserve any severed mineral interest in the Appellant's Property.   (Paragraph Numbers Original).

(Complaint, RE 1-1, Page ID # 9-10).

The Dormant Mineral Act was amended by the General Assembly effective June 30, 2006.  Because the merger of the mineral interest formerly held by appellee's predecessor with the appellant's surface ownership occurred *before* the amendment of the statute, automatically and by operation of law, the appellant's claim in this case is first advanced under the 1989 version of the Act.   Appellant's rights to the oil and gas either "vested" in her Sheriff's Deed, by law, or "automatically" by operation of the 1989 version of the Act.   See, Wendt v. Dickerson, infra.   However, the appellant also alleged, and demonstrated, that she complied with the 2006 version of the DMA, for purposes of quieting title to her interests.   The 2006 version of the Act revised the operation of the DMA; instead of operating "automatically," a surface owner is required to attempt service of a notice of abandonment (to a last known address), followed by the recording of an affidavit of abandonment.   The amended DMA allows a mineral interest claimant to respond to a notice of abandonment, in an effort to preserve any claimed rights, and provides an opportunity to aver that a Savings Event has transpired to avoid abandonment.   The appellee CNX does not contend that it filed any form of claim

8

or affidavit of preservation in this instance.    CNX offered no such documentation for the record.

Instead, the appellee CNX maintained through motion that: (1) a recorded Memorandum of Oil & Gas Lease, and particularly its related Release, operate as "title transactions," precluding application of the DMA; and (2) that recorded deeds conveying the surface interests in the property, in the chain of title preceding the appellant's deed, served as "title transactions" which prevent reliance upon the DMA.    The latter proposition was effectively abandoned by CNX based upon the Ohio Seventh District Court of Appeals Opinion in Dodd v. Croskey, Harrison C.P. Case No. CVH-2011-0019 (Oct. 29, 2012), 2013-Ohio-4257 (7th Dist.).    The former argument ignores the limited effect of an oil and gas lease under Ohio law.

For the following reasons, both positions asserted by the appellee should have failed as a matter of law, and the motion for judgment on the pleadings should have been overruled.

## V.    <u>SUMMARY OF ARGUMENT</u>

The District Court incorrectly applied Ohio oil and gas law to the facts involved in this case.

Appellee sought to avoid operation of the Ohio Dormant Mineral Act by alleging that certain recorded instruments (particularly the release of an oil and gas

lease) represented "title transactions" which preserved a prior severance of oil and gas interests from the property at issue in this case.   Appellant maintains that the memorandum of lease relied upon by the appellee contains limited language which has been construed by the Ohio Supreme Court as confining the interest granted thereby to that of a "license."   Under Ohio law, *a license is not a real property interest (it cannot affect title or ownership)*.   Consequently, neither the recording of the memorandum of lease, nor the release of same, qualify as a "title transaction" or a Savings Event.   The appellee's motion should be denied on the basis of the Ohio Supreme Court's decision in <u>Back</u>, infra, and the District Court decision in <u>Wellington</u>, infra, alone.   Otherwise, to the extent the appellee relied upon deeds conveying the surface estate of the property prior to appellant's acquisition of same as events which preserved the severed oil and gas interests, because the mineral rights were not "the subject of" those transaction between parties who did not hold the oil and gas interests at the time, the subject deeds had no effect on the mineral rights and did not somehow operate to preserve them.   <u>Dodd v. Croskey</u>, 2013-Ohio-4257 (7th  Dist.).

The record of this case also reflects that the appellant initially acquired title to the property at issue by way of a Sheriff's Deed recorded in 1994.   That Sheriff's Deed resulted from a delinquent tax lien foreclosure by the county authorities.

Because the appellee's predecessor did not preserve the severed oil and gas interest by obtaining a separate tax parcel identification number for such interest, the tax lien sale should be declared as having extinguished all prior titles claimed before the recording of the Sheriff's Deed in the name of the appellant.   There was a <u>single tax parcel</u> which was the subject of the tax foreclosure sale, and that sale then <u>conveyed the entire property interest</u> represented by that single number.

## VI.   <u>STANDARD OF REVIEW</u>

Review of "a district court's grant of a motion for judgment on the pleadings [is] de novo."  <u>Jelovsek v. Bredesen</u>, 545 F. 3d 431, 434 (6th Cir., 2008), citing, <u>Roger Miller Music, Inc. v. Sony</u>, 477 F. 3d 383, 389 (6th Cir., 2007).

Fed. R. Civ. P. 12(c) provides that:

After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings.

The standard applicable to a motion for judgment on the pleadings is the same as that for a motion to dismiss under Civil Rule 12(b)(6).   E.g., <u>Ziegler v. IBP Hog Market</u>, 249 F. 3d 509, 511-512 (6th Cir. 2001); <u>Bell v. JP Morgan Case Bank</u> (June 28, 2006), E.D. Mich. Case No. 06-11550; <u>Jelovsek v. Bredesen</u>, supra.   As the Court is well aware, the allegations of the property owner's complaint must be construed in a "light most favorable to the appellant," and the factual allegations of the complaint are taken "as true" for the purpose of determining the legal sufficiency

11

of same.   <u>Ziegler v. IBP Hog Market</u>, supra; <u>Feichtner v. Roman Catholic Archdiocese of Cincinnati</u> (Mar. 7, 2006), S.D. Ohio Case No. 1:05-CV-00398. The inquiry is whether, from the well-pleaded facts, the appellant can prove no set of facts in support of a claim which would entitled the appellant to relief.   <u>Id.</u>   The "inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record, and attached exhibits may also be taken into account."   <u>Hutter v. Bennett</u> (Oct. 21, 1999), N.D. Ohio Case No. 3:99CV7157; <u>Bassett v. Nat'l Collegiate Athletic Ass'n.</u>, 528 F. 3d 426, 430 (6th Cir., 2008).

   In this case, the appellant's complaint contained sufficient allegations which, if true, would support a recovery against the appellee, based upon the Dormant Mineral Act and record title.   This Court should reverse the District Court's judgment.

## VII.  <u>ARGUMENT</u>

A.  THE DISTRICT COURT ERRED IN GRANTING THE APPELLEE'S MOTION FOR JUDGMENT ON THE PLEADINGS, DETERMINING THAT THE RELEASE OF AN OIL AND GAS LEASE QUALIFIES AS A "TITLE TRANSACTION" UNDER OHIO LAW.

THE APPELLANT McLAUGHLIN SUFFICIENTLY ALLEGED PLAUSIBLE CLAIMS FOR RELIEF.

Fed. R. Civ. P. 12(c) provides that:

After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings.

At the outset, appellee conceded that the standard applicable to a motion for judgment on the pleadings is the same as that for a motion to dismiss under Civil Rule 12(b)(6).  E.g., <u>Ziegler v. IBP Hog Market</u>, 249 F. 3d 509, 511-512 (6th Cir. 2001); <u>Bell v. JP Morgan Case Bank</u> (June 28, 2006), E.D. Mich. Case No. 06-11550.  Here, the allegations of the appellant's complaint were to be construed in a "light most favorable to the appellant," and the factual allegations of the complaint are taken "as true" for the purpose of determining the legal sufficiency of same.  <u>Ziegler v. IBP Hog Market</u>, supra; <u>Feichtner v. Roman Catholic Archdiocese of Cincinnati</u> (Mar. 7, 2006), S.D. Ohio Case No. 1:05-CV-00398.  The inquiry should have been limited to whether, from the well-pleaded facts, the appellant can prove no set of facts in support of a claim which would entitle the appellant to relief.

13

Id.

Pleading rules only require the statement of a claim for relief "that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007). A complaint "that states a plausible claim for relief" will survive a motion to dismiss. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009); Gudenas v. Cervenik (Feb. 22, 2010), N.D. Ohio No. 1:09 CV 2169, 2010 U.S. Dist. LEXIS 24487, *6. The property owner's complaint contained a plausible claim and, thus, should have survived the motion for judgment on the pleadings.

In this case, the appellant's complaint contains sufficient allegations which, if true, support application of the DMA and, thus, declaratory relief, as well as quiet title relief, in favor of the appellant. Therefore, the motion for judgment on the pleadings should have been overruled, and this Court should reverse.

A DECLARATORY JUDGMENT ACTION IS NOT PARTICULARLY WELL SUITED FOR RESOLUTION UNDER THE 12(B)(6) [12(C)] STANDARD.

This case was commenced as a declaratory judgment action under state law, in state court. The Ohio courts have recognized that, ordinarily, a claim for declaratory relief is not subject to dismissal under Civ. R. 12(B)(6). "There are only two reasons for dismissing a complaint for declaratory judgment before the court addresses the merits of the case: (1) where there is no real controversy or

14

justiciable issue between the parties . . .; or (2) when declaratory judgment will not terminate the uncertainty or controversy under R.C. 2721.07." <u>Johnson v. North Union School Dist.</u> (May 26, 2000), Union App. No. 14 2000 07, 2000 Ohio App. LEXIS 2247, *4. <u>Fioresi v. State Farm Ins.</u> (1985), 26 Ohio App. 3d 203, 203-4; R.C. 2721.07; <u>Ohio Asphalt v. Ohio Dept. Industrial Relations</u> (Mar. 21, 1989), Knox App. No. 88-CA-39, 1989 Ohio App. LEXIS 1111, *4. "Otherwise, the court is required to issue a judgment declaring the rights or legal relations, or both, of the parties, and the court errs when it dismisses the complaint for failure to state a claim under Civ. R. 12(B)(6)." <u>Fioresi</u>, supra, syllabus; <u>Ohio Asphalt</u>, supra. When justiciable issues are presented, the court is required to determine the rights and obligations of the parties. The same should hold true in this case, before the Federal Courts. See, 28 U.S.C. §2201.

In this case, the declaratory judgment sought by the appellant McLaughlin as to her vested rights in the oil and gas interests underlying her property would settle the controversy between the parties as to such rights. In this case, the substantive legal issues between the parties are determined purely under state law, namely the Dormant Mineral Act and the quiet title statute. R.C. 5303.01.

APPELLANT'S CLAIMS REPRESENT SIGNIFICANT RIGHTS.

Counties in Northeast and North-central Ohio are in the midst of significant

15

oil and gas activities centered on the development of the "Utica Shale" deposits. The development of the Utica Shale has, in turn, produced litigation as to oil and gas rights under the Dormant Mineral Act. This litigation is progressing at the trial court level, and a handful of cases are pending in the state appellate courts, however, the Ohio courts have not yet "definitively spoken" on many issues under the DMA, including issues implicated in this case.

The appellant's complaint contained the requisite allegations stating plausible claims under the Dormant Mineral Act and quiet title statute and, thus, dismissal of the complaint, or consideration of judgment on the pleadings, was not warranted. Because of appellant's significant interests in her property, this case should have proceeded with discovery, if for no other reason than to address appellant's claim under the 2006 version of the DMA. Regardless, as set forth herein below, the appellee was not entitled to judgment as a matter of law, and the motion should have been overruled.

> THE FORM OF MEMORANDUM OF LEASE (AS WELL AS ITS RELEASE) RELIED UPON BY THE APPELLEE IS CONTROLLED BY THE OHIO SUPREME COURT DECISION IN *BACK v. OHIO FUEL GAS*.

Instruments providing for prospective or actual oil and gas development take any number of forms. While they are typically styled as a "lease," the actual language of the instrument governs its construction and characterization. In this

16

case, the limited language used in the memorandum of lease relied upon by the

appellee CNX confines it to interpretation under the Ohio Supreme Court's

decision in <u>Back v. The Ohio Fuel Gas Co.</u> (1953), 160 Ohio St. 81.   Two Ohio

trial court decisions relied upon by CNX must yield to the controlling authority of

<u>Back</u>.

The memorandum of lease relied upon by the appellee provides as follows,

in pertinent part:

> THIS MEMORANDUM OF LEASE made and entered into as of the
> 15th day of __July__, 19_81_, by and between CONSOLIDATION
> COAL COMPANY, . . . "Lessor" . . . and REPUBLIC STEEL
> CORPORATION, . . . "Lessee" . . .;
>
> . . .
>
> WHEREAS, the parties have heretofore entered into an Option to
> Lease, dated June 27, 1977, by which Lessor granted to Lessee the
> right and option to lease oil and gas rights on certain lands in Carroll, .
> . . Counties, State of Ohio, . . .
>
> WHEREAS, Lessor and Lessee have heretofore executed a Third
> Amendment to Oil and Gas Lease, dated July 10, 1979 . . . pursuant to
> which Lessee has exercised the said Option to Lease and Lessor has
> granted, leased, and let to Lessee oil and gas rights on those certain
> lands . . .
>
> NOW, be it hereby known that:
>
> . . .
>
> (2) Lessor has granted, leased and let to Lessee all of the *oil and gas
> rights* owned by Lessor as of the date of the said Third Amendment

17

on those certain lands . . . .

(Lease Exhibit, RE 3-3, Page ID # 63-68).    (Emphasis added).

In <u>Back</u>, the instrument under consideration contained similar language, granting "oil and gas rights" to an oil company.    The instrument generally granted oil and gas "in and under the land" in question, with the right of operating on the land to obtain the oil and gas.    <u>Id.</u>, p. 83.    A portion of the instrument quoted by the Court, provided:

> To have and to hold the above granted and bargained *oil and gas rights*, with the appurtenances thereunto belonging unto the said grantee, its successors and assigns, forever.
>
> And we . . . covenant with the said grantee, its successors and assigns, that . . . we are well seized *of the oil and gas rights* in, upon and under the above described premises . . . .

<u>Id.</u>, p. 84 (*Emphasis original*).    The question as to the effect of the instrument was necessary to determine, since the question in the case turned on whether recording of same was sufficient in the record of leases as opposed to the record of deeds. The Court held that:

> **The character of the instrument of conveyance reveals that it is other than a grant of real property**.    **Possession of oil and gas, having as they do a migratory character, can be acquired only by severing them from the land under which they lie, and in effect the instrument of conveyance in the instant case is not more than a license to effect such a severance**.    The very sale of oil and gas, separate and apart from the real estate surface, constitutes, in law, a constructive severance such as occurs in the case of sale of standing

18

timber or growing crops.

**The instrument of conveyance, as a whole, bears the earmarks of a license**. It grants operating privileges on the land surface, just as would be necessary to remove standing timber or growing crops in the sale thereof. **In the habendum clause of the instrument here, which measures the estate granted, the interests granted or conveyed are designated as "the above granted and bargained oil and gas rights, with the appurtenances thereunto belonging," and are not characterized as oil and gas in place**. Likewise, the covenant of seizin and warranty relates solely to "the oil and gas rights in, upon and under the above described premises." It is significant, also, that when the parties chose to transfer an interest granted under the original instrument of conveyance they did so by a mere assignment of the instrument and not by a new and subsequent deed which would be necessary in case real property was being transferred.

. . .

Applying the statutes above quoted to the terms of the granting instrument here under consideration as it deals with the peculiar character of the property to which it relates, this court is of the view that the instrument in question is a license rather than a deed of conveyance.

<u>Id.</u>, pp. 86, 89 (Emphasis added). These rules should control here.

The habendum clause of the memorandum of lease between Consolidation and Republic Steel, measuring the interests conveyed, was equally limited as in <u>Back</u>. The parties to the memorandum used the words "Lessor has granted, leased and let to Lessee *all of the oil and gas rights* owned by Lessor . . . ." (Emphasis added). These words do not represent a grant "characterized as oil and

19

gas in place;" instead, these words bear the "earmarks of a license." <u>Back</u>, at p. 86. When properly viewed as an instrument granting a license only, the memorandum of lease relied upon by the appellee does not qualify as a "title transaction" and, thus, *neither the memorandum nor the release of same qualifies as a Savings Event* under the DMA.

R.C. 5301.47(F) defines a "title transaction" as follows:

(F)    "Title transaction" means **any transaction affecting title to any interest in land**, including title by will or descent, title by tax deed, or by trustee's, assignee's, guardian's, executor's, administrator's, or sheriff's deed, or decree of any court, as well as warranty deed, quit claim deed, or mortgage.

(Emphasis added).    **As a matter of law, a "license" does not affect title to any interest in land**.    "A license interest in property is . . . a mere permission or personal privilege to use . . . .    A license passes no property or interest in real estate.'"    <u>Waldock v. Unknown Heirs of Wagner</u> (June 7, 1991), Erie App. No. E 89 53, 1991 Ohio App. LEXIS 2599, *9.    Inasmuch as a license passes no interest in real estate, a license cannot qualify as a "title transaction."    A *license* cannot be a Savings Event, thus an oil and gas *lease as such* cannot be a Savings Event.

The District Court focused on the words "*any transaction* affecting title to *any interest* in land" drawn from R.C. 5301.47(F).    (Opinion, RE 19, Page ID # 477).    (Italics original).    Emphasis on the italicized words "any transaction . . .

20

any interest" in land misses the clear import of the intervening words.    To qualify as a title transaction that transaction must <u>affect title</u> to any interest in land. Merely a transaction affecting real property or affecting any interest in land is insufficient.    The crucial word to the analysis is title – the transaction must affect title.    An oil and gas lease, extending permission, a license to drill for and produce minerals, does not convey or affect title.    To affect title there must be a conveyance.    "In order for the mineral interest to be the 'subject of' the title transaction <u>the grantor must be conveying that interest</u> or retaining that interest." See, <u>Dodd</u>, supra at Paragraph 48 (Emphasis added).

Contrary to the District Court's conclusion, a title transaction **does** require a conveyance or transfer in order to constitute a title transaction.    See, (Opinion, RE 19, Page ID # 477); <u>Dodd</u>, supra.    Ohio law requires a transaction "affecting title," and the statute then makes specific reference to forms of deeds.    In Ohio real property law, title is synonymous with ownership.    E.g., <u>Jefferson Golf and Country Club v. Leonard</u>, 2011-Ohio-6829, P. 19, 25, 31 (10th Dist.).    A property owner is the holder of legal title, not the holder of some equitable interest and not a lessee.    <u>Id.</u>    Accord, <u>Performing Arts School of Toldeo v. Wilkins</u>, 104 Ohio St. 3d 284, 2004-Ohio-6389, P. 14 (IN real property, "owner" is the holder of "legal title.").    A lessee does not hold title; is not an owner.    <u>Id.</u>

21

An oil and gas lease (particularly one represented by the limited form of memorandum at issue in this case), which extends permission in the form of a license to drill for and produce oil and gas, simply does not convey title; it does not affect who is the "owner" of the oil and gas.   The "owner" who holds legal title remains at liberty to sell, transfer or convey ownership of the minerals, subject to the lease and the permission granted thereunder.   At best, the holder of the lease can transfer the permission to explore and produce but cannot transfer ownership or title.   A memorandum of lease is not a title transaction, it does not affect title, and likewise a release of such memorandum is not a title transaction because it does not affect title, meaning ownership.

As observed in <u>Back</u>, it appears as though the memorandum of lease was "assigned" at some point to Kelt (the party who executed the release upon which appellee relied).   There is nothing in the record offered by CNX to suggest that the memorandum of lease had been transferred to Kelt by an instrument in the form of a deed, "which would be necessary in case real property was being transferred."   When the parties choose to transfer an interest granted under an instrument "by a mere assignment of the instrument," that further demonstrates that the original conveyance was in the nature of a license (something less than a grant of real property).   <u>Back</u>, supra.

The state trial court decision relied upon by CNX, <u>Bender v. Morgan</u>, Columbiana C.P. Case No. 2012-CV-378, itself relied, in part, upon the characterization of an oil and gas lease as set out in <u>Kramer v. PAC Drilling Oil & Gas</u> (Dec. 29, 2011), 2011-Ohio-6750.   However, and importantly, the leases in both <u>Bender</u> and <u>Kramer</u> contained significantly broader language, indicating that the instruments therein were intended to grant oil and gas, in place.   For instance, in <u>Kramer</u>, the court noted that the lease included broad provisions, granting the oil and gas in place:

> Under the terms of the oil and gas lease at issue in this case, the Kocsises "grant[ed] unto [McClanahan Oil] all of the oil and gas and all of the constituents of either in and under [the 149 acres] together with the exclusive right to drill for, produce and market oil and gas and their constituents[.]"   The Ohio Supreme Court has recognized that <u>language like the language used in this lease operates as "more than a mere license.</u>"   *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129, 48 N.E. 502 (1897).   Rather, it conveys "a vested, though limited, estate in the lands for the purposes named in the lease."   <u>Id.</u> at 130. The lease separated the surface estate of the Kocsises' land from its oil and gas estates and conveyed ownership of the oil and gas estates to McClanahan Oil.

<u>Id.</u>, at ¶11.   The Consolidation memorandum of lease does <u>not</u> contain any language granting to Republic Steel the oil and gas in place.   Instead, as addressed above, the memorandum merely reflects granting of "oil and gas rights." This latter form of instrument operates as a license, as expressed in <u>Back</u>.

Frankly, <u>Back</u> controls interpretation of the instruments relied upon by the

23

appellee, and limits them to being non-title transactions, regardless of the actual wording therein.    On September 20, 2013, Judge Marbley of the Southern District Court in Ohio followed and applied <u>Back</u>.    <u>Wellington Resource Group v. Beck Energy</u> (Sept. 20, 2013), S.D. Ohio No. 2:12 CV 104, 2013 U.S. Dist. LEXIS 134838.    The court in <u>Wellington</u> held as follows:

> Oil and gas leases are not "real estate" under Ohio law.    [O]il and gas leases have not historically been considered interests in land in Ohio.    A thorough survey of Ohio case law leaves this Court convinced that the Ohio Supreme Court, if given the occasion to rule on this issue today, would so hold.

> In its previous review and analysis of these cases, this Court reasoned that, in Ohio, "oil and gas leases . . . are not leases as that term is traditionally used"; instead, "Ohio courts appear to recognize that such leases create a license to enter upon the land for the purpose of exploring and drilling for oil and gas."  *In re Fredrick Petroleum Corp.*, 98 B.R. 762, 766 (S.D. Ohio 1989).    . . .

> . . .

> [T]he Ohio Supreme Court again considered the status of oil and gas leases, while deciding whether such leases must be recorded under Ohio law, and found that a grant of "all the oil and gas in and under" a tract of land, as well as "the right and privilege of operating upon said premises . . . for the obtaining of such oil and gas," was *not* a grant of real property.  *Back v. Ohio Fuel Gas Co.*, 160 Ohio St. 81, . . . (Ohio 1953).    . . .  (Emphasis original).

> Given this Court's conclusion in *Frederick*, and the Ohio Supreme Court's decision in *Back*, it remains only for this Court to survey more recent cases to determine whether Ohio law has changed in the years since.    It is this Court's opinion that the Ohio Supreme Court would still hold that oil and gas leases are not part of the real estate in Ohio.

. . .

> In essence, **this Court reaffirms its prior conclusion in *Frederick*, where it stated that "Ohio courts, if given the opportunity to do so, would" . . . hold that oil and gas leases are not a grant of real property**.   (Emphasis added).

Id., at **17-20, 26.   Back is fundamental to Wellington, and it controls here. The instruments relied upon by CNX do not qualify as title transactions and, thus, do not operate as Savings Events.   Appellee was not entitled to judgment.

Logically, since the memorandum of lease does not qualify as a title transaction, the release of such "license" by the instrument recorded on July 16, 1992 (Release, RE 3-6, Page ID # 81-82), likewise does not qualify as a title transaction.   The latter instrument merely operated to relinquish and surrender the terms of the license (Memo. of Lease, Lease Exhibit RE 3-3, Page ID # 63-68) that had evidently been assigned to Kelt.

The additional trial court decision relied upon by the appellee, Davis v. Consolidation Coal Co., Harrison C.P. No. CVH-2011-0081, must equally yield to the Supreme Court decision in Back.   In stark contrast to the more-recent Wellington case, the Davis decision contains absolutely no analysis whatsoever regarding the nature of interests conveyed by a memorandum of oil and gas lease, or by an instrument releasing same.   It cannot even be determined from a reading

25

of the <u>Davis</u> decision whether the court in that instance was called upon to examine and determine such issue.   In any event, the <u>Davis</u> decision does not withstand scrutiny under <u>Back v. Ohio Fuel Gas</u> and <u>Wellington Resource Group</u>.

Other Ohio courts have also rejected the contention that an oil and gas lease amounts to a "title transaction," for purposes of operating as a Savings Event. E.g., <u>Shannon v. Householder</u>, infra.   The list of instruments set forth in R.C. 5301.47(F) itself, that qualify as title transactions, does <u>not</u> include a lease for oil and gas, a memorandum of lease, or a release of same.   The Court should resist the suggestion implicit in appellee's argument to include such instruments within the statutory list.   Moreover, if an oil and gas lease was sufficient to operate as a Savings Event, then the General Assembly would not have needed to include among the list of Savings Events "actual production or withdrawal of minerals . . . from the lands covered by a lease."   R.C. 5301.56(C)(ii).   R.C. 5301.56(C)(ii) would be rendered superfluous by the position advanced by the appellee, and as a matter of statutory construction, no portion of a statute is to be rendered superfluous or inoperative.   Only actual production or withdrawal of oil and gas under the terms of a lease operates as a Savings Event.   The appellee CNX does not contend that there was ever any actual production or withdrawal of oil or gas from underneath the property owned by the appellant at any time under the

26

memorandum of lease or any other instrument released by Kelt.

This Court should adopt <u>Wellington</u> and follow <u>Back</u>, and hold that, under Ohio law, an oil and gas lease is merely a license and not an interest in real property.   Thus, an oil and gas lease cannot qualify as a title transaction or "Savings Event," for purpose of the DMA.   An oil and gas lease does not affect title; it does not affect ownership or convey title.   See, <u>Dodd</u>.   Similarly, the release of an oil and gas lease does not qualify as an instrument "affecting title" to real estate and is not a Savings Event.

B.   THE DISTRICT COURT ERRED IN GRANTING THE APPELLEE'S MOTION FOR JUDGMENT ON THE PLEADINGS, INASMUCH AS THE OIL AND GAS INTERESTS CLAIMED BY APPELLEE HAD PREVIOUSLY BEEN EXTINGUISHED THROUGH THE PROCESS OF A TAX FORECLOSURE SALE.

The appellee CNX admitted that the appellant McLaughlin originally acquired her interest in the property by way of a Sheriff's Deed, recorded May 25, 1994.  (Counterclaim, RE. 3, ¶12, Page ID # 47).   That Sheriff's Deed was the product of a delinquent tax lien sale.   (Deed Exhibit, RE. 3-7, Page ID # 83-86). Given that the title conveyed following a tax lien sale is a new and separate title to the subject property, it appears as though the tax sale extinguished any right or title of the appellee's predecessor, Consolidation.   See, (Answer to Counterclaim, RE 5, ¶11, 40, Page ID # 130, 134).   This issue was joined and ripe as part of the pleadings

in this case, and the District Court should have denied the motion accordingly.

Before this case was removed, the appellant served written requests for admissions directed to CNX.   The appellee provided answers to same and, therein, CNX acknowledged that the previously-severed oil and gas interest was <u>not</u> ascribed or assigned a separate tax parcel number.   (Admission Answers, RE. 13-7, Page ID # 335-356).   Thus, **the oil and gas interest was part of the entire estate in land upon which property tax was levied**.   Appellee's predecessor could have, and should have, protected itself if it wished to do so by: (1) obtaining a separate tax parcel number for the oil and gas interest under R.C. 5713.04 ("If the fee of the soil of a tract, parcel, or lot of land is in any person, natural or artificial, and the right to minerals therein in another, the land shall be valued and listed in accordance with such ownership in separate entries, specifying the interest listed, and be taxed to the parties owning the different interests"); and (2) informing the county treasurer of its separate address as owner of the oil and gas interest, pursuant to R.C. 323.13.   It is the duty of a property owner to pay real estate taxes and to see that his property is properly listed on the tax records.   <u>Howard v. Dor El Realty</u>, 20 Ohio App. 2d 191, 195 (1969).   "Real estate taxes are upon the land itself and not upon the persons owning it."   <u>Id.</u>, 193-4.   By failing to utilize these protective measures, the appellee CNX cannot rely upon any title prior to the tax foreclosure title taken by the

28

appellant through the process of delinquent tax lien foreclosure.

The proceeding to foreclose a tax lien on land is one "in rem" on the land itself rather than on the title thereto. <u>Hunter v. Grier</u>, 173 Ohio St. 158 (1962), Syllabus. "Proceedings of this nature are not usually proceedings against parties . . . . They are proceedings which have regard to the land itself rather than to the owners of the land, and if the owners are named in the proceedings and personal notice is provided for, it is rather from tenderness to their interests, and in order to make sure that the opportunity for a hearing is not lost to them, than from any necessity that the case shall assume that form." <u>Id.</u>, 161-162.

The title which the appellant obtained through the in rem tax foreclosure was not contingent upon IES' title or any other title for that matter:

> A **tax title** from its very nature has nothing to do with a previous chain of title; does not in any way connect itself with it. **It is a breaking up of all previous titles**. The party holding such title, in proving it, goes no further than his tax deed; the former title can be of no service to him nor can it prejudice him. **If the land be regularly sold for taxes, the property, accompanied with a legal title, goes to the purchaser, no matter how many estates, legal or equitable, may be connected with it**.

<u>Slaughter v. Fitzgerald</u>, 66 Ohio App. 53, 60-61 (1939). (Emphasis added). Thus, in <u>Slaughter</u>, the court held that the tax lien sale conveyed not only the interest of the named, delinquent owner but outright fee simple title. This is because the "tax attaches upon the land rather than upon the person." <u>Id.</u>, 60. Because delinquent

29

tax sales are in rem, they operate "upon the land itself, and not merely upon the title of the person in whose name it may have been listed for taxation." <u>Id.</u>, 61.  **A tax title "extinguishes all previous titles, legal or equitable, inchoate or perfect**." <u>Id.</u>

In the absence of a separate tax parcel number for severed mineral interests, real property tax is assesses as a single estate or interest, and a tax bill is sent to the owner of the property.   <u>In re. National Tube</u> (1950), 98 N.E. 2d 78.   Thus, the 1994 foreclosure on the property tax lien which resulted in the Sheriff's Deed granted to the appellant, was for non-payment of real property taxes on the single, entire estate or interest in the land.   All interests were sold and transferred in the foreclosure, to satisfy the tax lien.   All prior titles were extinguished.   If appellee's predecessor intended to challenge the fee simple interest conveyed to the appellant in 1994, it had one year within which to do so.   R.C. 5723.13.   The record does not reflect any such challenge.

The Sheriff's Deed itself is significant in the determination of the appellant's rights.   That deed conveyed to the appellant and her late spouse the 143 acres "BEING the same parcel conveyed by deed dated October 1, 1957 from John Ujcich et. ux. to Pittsburgh Consolidation Coal Company, recorded in Volume 128, Page 260, Deed records of Carroll County, Ohio."   (Dee Exhibit, RE 3-7, Page ID # 84).

In other words, the property conveyed to appellant was the *entire property* as described in the *1957 Ujcich deed*, which predated the deed containing the oil and gas reservation relied upon by the appellee, granted in 1985.

For these additional reasons, based upon appellant's tax title, the District Court erred in granting the motion for judgment on the pleadings, and this Court should reverse.

C.    THE DISTRICT COURT ERRED IN GRANTING THE APPELLEE'S MOTION FOR JUDGMENT ON THE PLEADINGS, BECAUSE APPELLEE'S OIL AND GAS INTERESTS HAD BEEN ABANDONED UNDER THE NOTICE AND RECORDING PROVISIONS OF THE OHIO DORMANT MINERAL ACT, AS AMENDED JUNE 30, 2006.

The only Savings Events alleged by the appellee CNX was refuted by the appellant, as addressed herein above.   When those matters are disregarded, for all of the reasons addressed above, the sufficiency of the appellant's claims becomes apparent.   Appellee does not allege the occurrence of any other Savings Event(s).

Neither the memorandum of lease (and its release) nor any surface estate transactions qualify as title transactions for purposes of a Savings Event under the DMA.   Thus, **the record discloses no other Savings Event(s) from the severance deed recorded January 3, 1985, for a period of 20 years**.   Under such facts, as alleged by the appellant in her complaint, for which support has been demonstrated herein from the record, the severed mineral estate merged with the surface estate no

31

later than January 3, 2005, under the 1989 version of the DMA.

Additionally, the record demonstrates that the appellant satisfied the provisions of the 2006 version of the DMA as well, for the purpose of confirming her interests in the oil and gas underlying her property.    Appellant, through counsel, attempted to serve a notice of abandonment to the appellee's predecessor via certified mail, addressed to Consolidation's last known address.    (Answer to Counterclaim, RE 5, Page ID # 136-140).    When that notice was returned undeliverable, the appellant, through counsel, then followed the Revised Code and published such notice in a newspaper of general circulation.    (Answer to Counterclaim, RE 5, Page ID # 142-143).    See, R.C. 5301.56 (E) (2006).    The notice was published on November 4, 2010.    "Counting back" twenty years prior to that publication, no form of "title transaction" or other Savings Event has been identified.    After the passage of 30 days, the appellant then properly recorded an affidavit of forfeiture with the county recorder.    (Affidavit Exhibit, RE 1-1, Page ID # 33-35).    Again, this complied with the 2006 version of the Act.    Finally, after the passage of 60 days, the appellant then recorded a request that the county recorder enter on the journal a marginal notation that the previously-severed oil and gas interests were abandoned, under R.C. 5301.56(H)(2).    (Affidavit Exhibit, RE 13-8, Page ID # 342-344).

32

From this record, consistent with the appellant's pleadings in this case, it is manifestly clear that the appellant alleged a plausible claim for relief under the 2006 version of the DMA.   Appellee's motion for judgment on the pleadings was without merit and should have been overruled.

## VIII. <u>CONCLUSION</u>

Appellant has demonstrated that the record supports title by way of a Sheriff's Deed, stemming from a tax foreclosure on the *single tax number* relating to the real property at issue.   That tax sale eliminated the competing, severed title which appellee relied upon.   This issue was framed by the pleadings, and appellee's motion should have been denied for this reason alone.

Otherwise, as a matter of law, the release of an oil and gas lease does not operate as a DMA Savings Event under Ohio law.   At best, the oil and gas lease relied upon by appellee was a license; it was not an instrument "affecting title" or affecting ownership to real property.   Consequently, the release of same could not, as a matter of law, be recognized as a "title transaction" or Savings Event.

**WHEREFORE**, appellant, Nancy M. McLaughlin, Trustee of the Nancy M. McLaughlin Living Trust Dated February 15, 2006, respectfully requests that the appellant's arguments and assignments of error be sustained, and that the judgment of the District Court be reversed herein.   Further, appellant respectfully requests that this matter be remanded for the entry of judgment on appellant's claims.

Respectfully submitted,

s/James F. Mathews
James F. Mathews (0040206)
BAKER, DUBLIKAR, BECK,
WILEY & MATHEWS

34

400 South Main Street
North Canton, Ohio 44720
Email:    mathews@bakerfirm.com
Phone:        (330) 499-6000
Fax:            (330) 499-6423
Counsel for Appellant


s/Robert J. Tscholl
Robert J. Tscholl (0028532)
400 South Main Street
North Canton, Ohio 44720
E-mail:    btscholl740@yahoo.com
Phone:        (330) 497-8614
Fax:            (330) 497-8613
Counsel for Appellant

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,691 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in 14-point Time New Roman.

<u>s/James F. Mathews</u>      <u>March 24, 2014</u>
(Signature of Counsel)        Date

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2014, a copy of the foregoing Brief of Appellant was filed electronically.   Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.   Parties may access this filing through the Court's system.

<u>s/James F. Mathews</u>
James F. Mathews
BAKER, DUBLIKAR, BECK,
WILEY & MATHEWS

36

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Nancy M. McLaughlin v. CNX Gas Company, LLC
*U.S. District Court, Northern District of Ohio*
Case No. 5:13-cv-01502

The following filings from the District Court's record are relevant documents:

| Date Filed | RE No. | Page ID # Range | Docket Text |
|---|---|---|---|
| 07/11/2013 | 1-1 | 8-35 | Complaint for Declaratory Judgment and to Quiet Title |
| 07/11/2013 | 1-1 | 33-35 | Affidavit Exhibit |
| 07/18/2013 | 3 | 42-56 | Answer and Counterclaim |
| 07/18/2013 | 3-7 | 83-85 | Sheriff's Deed |
| 08/07/2013 | 5 | 128-135 | Answer to Counterclaim |
| 08/07/2013 | 5-1 | 136-140 | Certified Mail Exhibit |
| 08/07/2013 | 5-2 | 141-143 | Proof of Publication Exhibit |
| 08/30/2013 | 8 | 156-159 | Motion for Judgment on the Pleadings |
| 08/30/2013 | 8-1 | 160-168 | Memorandum in Support of Motion for Judgment on the Pleadings |
| 08/30/2013 | 8-2 | 170-171 | Partial Release of Oil and Gas Lease Exhibit |
| 08/30/2013 | 8 | 156-168 | Motion for Judgment on the Pleadings |

37

| 09/12/2013 | 9 | 197-200 | Motion for Leave to Supplement Motion for Judgment on the Pleadings |
| 09/30/2013 | 13 | 230-254 | Memorandum in Opposition to Motion for Judgment on the Pleadings |
| 09/30/2013 | 13-1 | 255-262 | <u>Wellington v. Beck</u> Opinion |
| 09/30/2013 | 13-7 | 334-340 | Answer to Admission Requests |
| 09/30/2013 | 13-8 | 341-344 | Affidavit of Abandonment Exhibit |
| 10/14/2013 | 14 | 357-378 | Reply to Memorandum in Opposition |
| 10/15/2013 | 15 | 440-442 | Motion for Leave to Supplement Opposition to Motion for Judgment on the Pleadings |
| 10/15/2013 | 15-1 | 443-451 | <u>Dodd v. Croskey</u> Opinion |
| 10/15/2013 | 15-2 | 452-461 | Ohio Secretary of State Certificate for Consolidation Coal Company Address Exhibit |
| 12/13/2013 | 19 | 473-479 | Memorandum, Opinion and Order Granting Motion for Judgment on the Pleadings |

| 12/20/2013 | 20 | 480-483 | Motion to Dismiss Counterclaim |
| 12/30/2013 | 21 | 484 | Marginal Entry Order; Granting Motion to Dismiss Counterclaim and Entering Judgment in Favor of Defendant |
| 01/28/2014 | 22 | 485-486 | Notice of Appeal |