No. 14-3102

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

NANCY M. McLAUGHLIN

Plaintiff-Appellant,

vs.

CNX GAS COMPANY, LLC

Defendant-Appellee.

On Appeal from the United States District Court
for the Northern District of Ohio at Akron

_____

**BRIEF OF APPELLEE CNX GAS COMPANY, LLC**

_____

Rodger L. Puz, Esquire
DICKIE, McCAMEY & CHILCOTE, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA 15222

Counsel for Appellee, CNX Gas Company, LLC

*Oral Argument Requested*

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS</u><br><u>AND FINANCIAL INTEREST</u>

Pursuant to 6th Cir. R. 26.1, Defendant-Appellee, CNX Gas Company, LLC, makes the following disclosures:

1.     Is said party a subsidiary or affiliate of a publicly-owned corporation? If that answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

Yes.  CNX Gas Company, LLC is the wholly-owned subsidiary of CNX Gas Corporation, which is the wholly-owned subsidiary of CONSOL Energy Inc.

2.     Is there a publicly-owned corporation, not a party to the appeal, that has a substantial financial interest in the outcome?  If the answer is YES, list the identity of such corporation and the nature of the financial interest:

No.

<u>s/ Rodger L. Puz</u>                          <u>April 23, 2014</u>
(Signature of Counsel)                     Date

# **TABLE OF CONTENTS**

**Page**

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST ................................................................................ i

TABLE OF AUTHORITIES ................................................. iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ........................ v

I.  STATEMENT OF THE ISSUES PRESENTED FOR APPEAL ........... 1

II.  STATEMENT OF THE FACTS ........................................ 2

    A.  Title History ................................................ 2

    B.  Procedural History ......................................... 5

III.  SUMMARY OF ARGUMENT ......................................... 6

IV.  STANDARD OF REVIEW ........................................... 9

V.  ARGUMENT ...................................................... 11

    A.  There are no disputed issues of fact and as a matter of law, Appellant failed to plead a plausible cause of action. ...................................................... 11

    B.  The Ohio Supreme Court's decision in *Back v. Ohio Fuel Gas* does not address and certainly does not "control" the issue of an oil and gas lease—in the form of a "license" or otherwise—as a "title transaction" under the ODMA ........................................... 14

    C.  There is no colorable basis for Appellant to claim that she acquired the oil and gas rights at issue through the 1994 tax sale—the record demonstrates that the delinquent taxpayer only owned the surface ................ 22

    D.  Appellant's October 2010 "attempt" at notice under the 2006 ODMA was irrelevant because of the 1992 "savings event." ............................................ 25

VI.  CONCLUSION .................................................... 26

CERTIFICATE OF COMPLIANCE ........................................ 28

CERTIFICATE OF SERVICE ............................................ 28

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ............. 29

# TABLE OF AUTHORITIES

**Page**

Cases

*Back and Wellington Resource Group v. Beck Energy*, 2013 U.S. Dist.
LEXIS 134838 (S.D. Ohio, Sept. 20, 2013) .......................................... 15, 16, 17

*Back v. Ohio Fuel Gas*, 113 N.E.2d 865 (Ohio 1953) ......................... 14, 15, 16, 17

*Barany-Snyder v. Weiner*, 539 F.3d 327 (6th Cir. 2008) ........................................10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 10, 11

*Bender v. Morgan*, No. 2012-CV-378 (C.C.P. Columbiana County,
March 22, 2013) ................................................................................ 15, 16, 17, 20

*Binder v. Trinity OG Land Development and Exploration, LLC*, 2012 WL
1970239 (N.D. Ohio, May 31, 2012) ....................................................................16

*Davis v. Consolidation Coal Company*, No. CVH-2011-0081 (C.C.P.
Harrison County, Aug. 28, 2013) ................................................................ passim

*Fioresi v. State Farm Ins.*, 499 N.E.2d 5 (Ohio App. 1st 1985) ....................... 12, 13

*Grindstaff v. Green*, 133 F.3d 416 (6th Cir. 1998) ...............................................10

*Howard v. Dor El Realty Co.*, 253 N.E.2d 304 (1969) ...........................................24

*In re National Tube*, 98 N.E. 2d 78 (1950) .............................................................24

*Johnson v. North Union School Dist.* 2000 Ohio App. LEXIS 2247
(Union Co., May 26, 2000) ............................................................................. 12, 13

*Ohio Asphalt v. Ohio Dept. Industrial Relations*, 1989 Ohio App. LEXIS
1111 (Knox Co., March 21, 1989) .................................................................. 12, 13

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235
(6th Cir. 2011) ..................................................................................................9, 10

*Shannon v. Householder*, No. 12CV226 (C.C.P. Jefferson County, July
17, 2013) (RE 13-2, Page ID # 263-271) ...................................................... 19, 20

*Slaughter v. Fitzgerald*, 31 N.E.2d 744 (Ohio Ct. App. 1939) ...............................24

*Smith v. Newell*, 2007 Ohio App. LEXIS 66, *16 (Ohio Ct. App. 2007) ...............22

*Summerville v. Forest Park*, 943 N.E.2d 522 (Ohio 2010) ....................................18

*Whittiker v. Deutsche Bank National Trust Co.*, 605 F. Supp.2d 914
(N.D. Ohio 2009) ...................................................................................................10

*Yoss v. Markley*, 68 N.E.2d 399, 402 (C.C.P. Tuscarawas County, 1946) ....... 23, 24

Statutes

2000 Ohio App. LEXIS 2247, *1 ............................................................................13

6th Cir. R. 12(b)(6) ........................................................................ 9, 11, 12, 13

6th Cir. R. 12(c) ............................................................................ 9, 10, 11, 12

6th Cir. R. 26.1 .................................................................................................. i

6th Cir. R. 34(a) ................................................................................................. v

Black's Law Dictionary, 6th Ed., pp. 57 ...............................................................18

Fed. R. App. P. 32(a)(5) .......................................................................................28

Fed. R. App. P. 32(a)(6) .......................................................................................28

Fed. R. App. P. 32(a)(7)(B) ...................................................................................28

Fed. R. App. P. 32(a)(7)(B)(iii) .............................................................................28

Fed. R. App. P. 34(a) ............................................................................................. v

O.R.C. § 5301.56(B)(3) ........................................................................................25

O.R.C. § 5301.56(B)(3)(b) ....................................................................................21

O.R.C. § 5301.56(E) .............................................................................................26

Ohio Rev. Code § 5713.03 ....................................................................................22

Ohio Rev. Code § 5713.04 ....................................................................................22

Ohio Rev. Code Ann. Sec. 3319.084 .....................................................................13

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

Appellee, CNX Gas Company, LLC, respectfully requests oral argument pursuant to Fed. R. App. P. 34(a) and 6th Cir. R. 34(a) in connection with this appeal. While the facts are not in dispute, the legal issues, including application of the Ohio Dormant Mineral Act to oil and gas leases and releases of oil and gas leases, are unique. Appellee respectfully submits that oral argument, including the opportunity to ask questions of counsel, will assist this Honorable Court in its examination of these unique legal issues and its determination on this appeal.

## I.    <u>STATEMENT OF THE ISSUES PRESENTED FOR APPEAL</u>

The issues before this Court involve the District Court's common sense application of the Ohio Dormant Mineral Act ("ODMA") which, by definition, is designed to promote production of minerals, as well as its application of basic concepts of property law.

The first issue raised by Appellant on appeal is whether a landowner states a claim under the ODMA for abandonment of an oil and gas estate despite the undisputed presence of a recorded lease of that oil and gas and a recorded "release" of that oil and gas lease within the statutory time period. The District Court properly concluded that a lease and release of a lease constitute "savings events" and a landowner cannot state a claim under those circumstances. A "title transaction" is one "affecting any interest in land" and does not require an actual transfer of real property *in fee*. It is beyond dispute that the lease and subsequent release of that lease "affect title" to the oil and gas at issue.

The second issue raised by Appellant is whether a buyer of real property may acquire by a tax sale an interest in the property *greater* than that owned by the delinquent taxpayer. The District Court properly concluded that, as a matter of law, such a buyer cannot. As a matter of basic property law, Appellant could not have acquired the oil and gas rights (which had previously been severed and leased) through the tax sale of the surface property only.

1

The final issue raised by Appellant involves her purported "attempt" to comply with the notice provisions of the ODMA and whether Appellant stated a claim for relief. This "claim" failed as a matter of law because the "title transactions" rendered the relief Appellant claimed under the ODMA inapplicable—the filing of an affidavit cannot overcome the existence of recorded "savings events" which preserved CNX's interests.

## II.   STATEMENT OF THE FACTS

### A.   Title History

In 1957, a predecessor of CNX, Consolidation Coal Company ("Consolidation"), acquired all interests, including mineral rights, in a 143 acre tract in Lee Township, Carroll County, Ohio, from John and Della Ujcich by deed dated October 1, 1957. Carroll County Deed Book Volume 128, Page 260 (1957 Deed, RE 3-1, Page ID # 57).

In 1977, Consolidation, as Optioner, entered into an "Option to Lease" with Republic Steel Corporation ("Republic"), as Optionee, relating to oil and gas rights on lands in Carroll, Belmont, Harrison and Jefferson Counties in Ohio. Carroll County Record Book Volume 52, Page 736 (Option to Lease, RE 3-2, Page ID # 58-62). The oil and gas rights to the 143-acre tract at issue in this matter were among the properties included within the 1977 Option to Lease. *Id.*

In 1979, by way of a Third Amendment to the 1977 Option to Lease, Republic exercised the option and leased from Consolidation certain lands, including the 143-acre tract at issue in this litigation. Carroll County Record Book Volume 60, Page 267 (Memorandum of Lease, RE 3-3, Page ID # 63-68).

In or around December of 1984, Republic Steel Corporation merged with and became known as LTV Steel Company, Inc. (Merger, RE 14-1 and 14-2, Page ID # 379-381).

In 1985, Consolidation conveyed all rights in the 143-acre tract to Conoco, Inc. ("Conoco), specifically reserving oil and gas. (1985 Deed, RE 1-1, Page ID #23-25).

On April 13, 1985, LTV Steel assigned all of its rights in certain leases, including all the acreage in the 1977 Lease between Consolidation and Republic, which includes the property at issue in this matter, to Carless Resources, Inc. Carroll County Record Book Volume 66, Page 780 (1985 Assignment, RE 14-3, Page ID #382-389). On September 30, 1990, Carless Resources, Inc. changed its name to Kelt Resources, Inc. (Name Change, RE 14-4, Page ID # 390).

By Deed recorded April 26, 1988, Conoco conveyed all rights in the 143 acre tract (reserving the oil and gas) to DuPont Energy Coal Holdings ("Dupont"). Carroll County Deed Book Volume 228, Page 494 (1988 Deed, RE 3-4, Page ID #69-72).

By Limited Warranty Deed recorded December 12, 1988 (and Corrective Deed recorded August 18, 1989), Conoco conveyed all rights in the 143 acre tract (reserving the oil and gas and specifically being "subject to the certain Lease granted by Consolidation . . . to Republic . . . recorded in Deed Volume 52, Page 736") to International Environmental Services, Inc. ("IES").   Carroll County Deed Book Volume 231, Page 234 and Volume 233, Page 771 (Limited Warranty Deed, RE 3-5, Page ID # 73-80).

On July 6, 1992, Kelt Resources, Inc. executed and recorded in Carroll County a "Partial Release of Oil and Gas Lease," whereby Kelt agreed to "release, relinquish, and surrender all of its right, title and interest in and to a portion of that Oil and Gas Lease made and entered into between Consolidation . . . and Republic."   Carroll County Record Book Volume 75, Page 448 (Partial Release, RE 3-6, Page ID # 81-82).   Through the July 6, 1992, Release, Kelt released "all acreage located in Carroll County, Ohio.   Said acreage being a total of 2253 acres, more or less, as shown on Exhibit 'A' attached hereto and made a part of hereof," which expressly included the oil and gas rights to the 143-acre tract at issue in this case. *Id*.

On May 25, 1994, Appellant and her late husband acquired the surface to the 143-acre tract at issue in this matter through a delinquent tax sale against IES. (1994 Deed on Decree or Order of Sale, RE 3-7, Page ID # 83-85).   After her

husband's death, Appellant conveyed certain property, including the subject tract, to herself as the Trustee of the Nancy M. McLaughlin Living Trust on March 24, 2006.  (2006 Deed, RE 1-1, Page ID # 13-22).

By Quitclaim Deed recorded in Carroll County on September 29, 2011, Consolidation conveyed the oil and gas rights underlying the 143-acre property at issue in this matter to CNX.   (2011 Deed, RE 1-1, Page ID # 26-32).

### B.     Procedural History

Appellant filed her Complaint for Declaratory Judgment and to Quiet Title against CNX in the Court of Common Pleas of Carroll County, Ohio on June 13, 2013.   Appellant claims that the previously severed mineral rights—conveyed to CNX on September 29, 2011—"merged with the surface estate in the plaintiff's Property no later than January 3, 2005" because following the 1985 severance, "twenty years passed without any production of oil or gas from the Property, and the mineral interest was not the subject of a title transaction under the Uniform Marketable Title Act" and "none of the conditions (savings events) set forth in R.C. 5301.56 (as enacted under SB 223) were satisfied in order to preserve any severed mineral interest in the plaintiff's Property."  Complaint, Paragraphs 7 and 9-11, RE 1-1, Page ID # 9-10.

On July 11, 2013, CNX removed the matter to the United States District Court for the Northern District of Ohio on the basis of diversity of citizenship.

Notice of Removal, RE 1, Page ID # 1-6.  CNX filed its Answer, Affirmative Defenses and Counterclaim on July 18, 2013 (RE 3, Page ID # 42-94), attaching copies of the publicly recorded chain of title documents referenced above.

On December 13, 2013, the District Court granted CNX's Motion for Judgment on the Pleadings (Memorandum Opinion and Order, RE 19, Page ID # 473-479), and entered a final judgment in favor of CNX on December 30, 2013 (Marginal Entry Order, RE 21, Page ID # 484), including a voluntary dismissal of CNX's Counterclaims.  Appellant filed a Notice of Appeal on January 28, 2014. RE 22, Page ID # 485-486.

## III.    **SUMMARY OF ARGUMENT**

CNX did not seek and the District Court did not grant a pre-answer dismissal of this action and CNX did not challenge the existence of a case or controversy or the availability of declaratory relief.  To the contrary, CNX argued and the District Court found that the law, as applied to the pleadings and public records attached thereto, precluded a finding in favor of the Appellant.

There are no questions of fact to resolve or discovery to be had.  There are no "inferences" to be made in favor of Appellant.  To be sure, **the critical facts are not in dispute**:

(1)    CNX Gas Company's predecessor, Consolidation, acquired the surface and underlying oil and gas in the property at issue in 1957;

(2)   The oil and gas at issue was severed from the surface and leased by Republic Steel/LTV Steel from Consolidation as evidenced in the Memorandum of Oil and Gas Lease duly recorded in Carroll County in 1981;

(3)   The Lease of the oil and gas at issue was assigned to Carless Resources/Kelt Resources as evidenced by an Assignment duly recorded in Carroll County in 1985;

(4)   The surface property was acquired by International Environmental Services, Inc. as evidenced by a document duly recorded in Carroll County in 1988;

(5)   The Lease of the oil and gas at issue was Released by Kelt Resources back to Consolidation as evidenced by a document duly recorded in Carroll County in 1992;

(6)   Appellant acquired the surface property by way of a Sherriff sale in 1994; and

(7)   CNX acquired the oil and gas rights from Consolidation as evidenced by a document duly recorded in Carroll County in 2011.

In the face of these undisputed facts, Appellant cannot state a viable claim of abandonment of the oil and gas rights. Whether the Court counts back twenty (20) years from the Appellant's claim of "automatic" vesting (January 3, 2005), Appellant's filing of an Affidavit of Abandonment (December 6, 2010), or the Quit Claim Deed from Consolidation to CNX (September 29, 2011), the result is the same: because the mineral interest was the "subject of a title transaction" on July 6, 1992 (the "PARTIAL RELEASE OF OIL AND GAS LEASE" by Kelt Resources, Inc.), the mineral interest cannot be deemed abandoned under the Ohio Dormant Mineral Act.

7

There can be no dispute that the ODMA was designed to promote the development of minerals.  To do so, the Ohio General Assembly determined that severed minerals which have lain dormant for a period of years, *e.g*., not extracted or not the subject of a title transaction ("any transaction affecting title to any interest in land"), may be reunited with the surface estate.   Here, Appellant would have this Court ignore the recorded 1977 Option to Lease, the 1979 Amendment, the 1981 Memorandum of Lease, and the 1992 Partial Release of Oil and Gas lease—each of which ***directly*** affected title to the oil and gas at issue in this case.

Appellant's argument requires this Court to rule that neither an oil and gas lease nor a release of an oil and gas lease—which, by definition, affect title and promote production of the mineral—qualifies as a "title transaction."   In other words, according to Appellant, in passing the ODMA, the Ohio General Assembly intended to protect ***only*** conveyances of minerals ***in fee*** and not a lease of those minerals, which, by definition, requires production of the minerals to remain valid, or by a release of the mineral lease, which results in a reversion of the mineral to the original owner.  Such a tortured reading of the ODMA is absurdly contrary to a plain reading and the purpose of the Act.

Appellant's contention that she stated a valid claim for relief through her acquisition of the surface property in 1994 via a tax sale is without merit.  The acquisition was the result of a Sherriff's sale, brought about by the apparent failure

of International Environmental Services, Inc. ("IES") to pay taxes on the surface estate.  IES, however, never owned the oil and gas—it acquired the surface by Limited Warranty Deed from Conoco, which Deed expressly reserved the oil and gas and expressly referenced the Lease between Consolidation and Republic. Appellant could not, by Sheriff's Deed or otherwise, acquire ***more*** than IES owned, and Appellant offers no authority to the contrary.

Finally, Appellant's alleged efforts in 2010 to "comply" with the notice provisions of the 2006 version of the ODMA are ***irrelevant*** because there was a statutory "savings event" in 1992.  Even if no savings event occurred, Appellant, through her own admission, failed to make the statutorily-required effort to effect service.

Accordingly, a dismissal in favor of CNX, in the form of judgment on the pleadings, was proper.

## IV.   <u>STANDARD OF REVIEW</u>

The Sixth Circuit Court of Appeals reviews a District Court's "grant of judgment on the pleadings under Rule 12(c) using the same de novo standard of review applicable to orders of dismissal under Rule 12(b)(6)."  *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 240 (6th Cir. 2011).

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6)—the court must

construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). However, "a legal conclusion couched as a factual allegation" need not be accepted as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In ruling on a Rule 12(c) motion, the court considers all available pleadings, including the complaint and answer. *See* Fed. R .Civ. P. 12(c). The court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice. *Whittiker v. Deutsche Bank National Trust Co*., 605 F. Supp.2d 914, 924-925 (N.D. Ohio 2009); *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). It is undisputed that the documents on which CNX relies—including the Lease and the Release—are recorded, public records.

Finally, "[a] federal court sitting in diversity must apply the law of the highest state court if the court has ruled on the matter in dispute; otherwise, the court may rely on case law from lower state courts." *Poplar Creek*, 636 F.3d at 240.

## V.    <u>ARGUMENT</u>

### A.    There are no disputed issues of fact and as a matter of law, Appellant failed to plead a plausible cause of action.

Appellant first argues that the District Court could not resolve questions of law at this stage and was required to accept as true "all" allegations of the Complaint, including, apparently, all legal conclusions.  Appellant is incorrect.

While it is accurate that a motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6), the procedural posture of the two (2) motions differ greatly.  In the former, the Court looks at only the Complaint.  In the latter, the Court looks at the Complaint, the Answer, the attachments to the Answer, as well as public records (such as in this case) and may apply the law to the facts as presented in the pleadings.  In other words, in a Rule 12(c) Motion, after consideration of the pleadings, the Court is determining whether the moving party is entitled to judgment as a matter of law.  Further, while resolution of the motions carries the same "standard", *i.e.*, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true, they also must apply the standard that "a legal conclusion couched as a factual allegation" need not be accepted as true.  *Twombly*, 550 U.S. at 555.

Here, the documents of record speak for themselves and the District Court properly interpreted and applied the ODMA to those documents and awarded

judgment on the pleadings in favor of CNX.   There are no *factual* allegations (and Appellant points to no disputed factual allegations) which, if true, support application of the ODMA and declaratory relief in favor of Appellant.    In this case, after the close of the pleadings, there remained only record documents and application of the law to those documents.

Further, Appellant's reliance upon the concept that declaratory actions such as her claim to the oil and gas at issue are not "particularly well suited for resolution under the 12(b)(6) [12(c)] standard" is completely misplaced. Appellant's argument is nonsense.   Where, as here, the pleadings and the documents attached to the pleadings show that the claim fails as a matter of law, judgment on the pleadings is proper, whether the relief sought is declaratory or otherwise.    By its Motion, CNX did not challenge the "justiciability" of Appellant's claims and did not seek a dismissal based on the Complaint alone. Thus, Appellant's attempted reliance on the state court decisions in *Johnson v. North Union School Dist.* 2000 Ohio App. LEXIS 2247 (Union Co., May 26, 2000)*, Fioresi v. State Farm Ins.*, 499 N.E.2d 5 (Ohio App. 1st 1985), and *Ohio Asphalt v. Ohio Dept. Industrial Relations*, 1989 Ohio App. LEXIS 1111 (Knox Co., March 21, 1989)—each of which involved summary dismissals without explanation from the trial court—is completely without merit.

For example, in the *Johnson* case, the plaintiff, a school district employee, filed a declaratory judgment action asking the court to interpret Ohio Rev. Code Ann. Sec. 3319.084 so as to declare that a vacation entitlement was not limited to the summer months.  The defendant did not answer and filed a Rule 12(b)(6) motion to dismiss.  The trial court issued a general statement of dismissal without providing any explanation of the statute.  *Id*., 2000 Ohio App. LEXIS 2247, *1. Similarly, in *Fioresi*, the plaintiffs sought a declaration as to a policy of automobile liability insurance.  The defendant did not answer and filed a Rule 12(b)(6) motion to dismiss.  The trial court granted the motion, issuing solely the following Order: "This matter coming on to be heard on the Motion of defendant to dismiss and the Court having considered the authorities submitted by attorneys for the parties, the Court finds that said Motion is well-taken and grants same and orders the complaint dismissed at the costs of the plaintiffs."  *Fioresi*, 499 N.E.2d at 7.[1]

There is no comparison to the instant case.  Appellant filed a Complaint and CNX answered, attaching documents demonstrating "savings events" rendering

---

[1] While the dismissal in the *Ohio Asphalt* case, which involved Ohio's "prevailing wage laws," followed an answer and a motion for judgment on the pleadings, the trial court provided no analysis of the issues showing an application of the law to the facts.  The appellate court noted that "we are presented with the situation where the complaint makes general allegations that no prevailing wage schedules were attached to the contracts that appellees are seeking to investigate, yet this cause was dismissed without any determination that the contracts were for public improvements and/or construction to which the prevailing wage laws . . . should apply."  *Ohio Asphalt*, 1989 Ohio App. LEXIS 1111 at *5.

any claim under the ODMA impossible, as a matter of law.  The District Court

reviewed the pleadings, the documents and the briefs, and issued a detailed opinion

regarding its interpretation of the ODMA.  Because the facts were not in dispute,

the Court was able to apply the statute and determine the rights of the parties.[2]

**B.      The Ohio Supreme Court's decision in *Back v. Ohio Fuel Gas* does not address and certainly does not "control" the issue of an oil and gas lease—in the form of a "license" or otherwise—as a "title transaction" under the ODMA.**

Appellant asks the Court to rule that the recorded 1977 Option to Lease

between Consolidation and Republic Steel, the 1979 Amendment to the Option to

Lease[3] and the recorded 1992 Partial Release of Oil and Gas Lease by Republic's

successor, Kelt Resources, Inc. are not "title transactions," *i.e.*, those "affecting

title to any interest in land."   In this manner, Appellant contends that the Ohio

Supreme Court's 1953 decision in *Back*[4] controls.   That case addressed the

question of

> whether, in order to constitute constructive notice to subsequent
> purchasers of land of [the existence of an oil and gas lease] . . . such
> instrument should be recorded in the record of leases under the
> provisions of Sections 8518 and 8519, General Code, or in the record
> of deeds under the provisions of Sections 2757 and 8543, General
> Code.

---

[2] Appellant argues that this case should proceed through discovery, but offers no suggestion as to what facts could be developed which might support her claim.

[3] In this recorded document, Republic exercised the Option as to the property at issue, rendering the property applicable to and governed by the June 27, 1977 Lease.  CNX Answer, Ex. "C," RE 3-3, Page ID # 63-68.

[4] *Back v. Ohio Fuel Gas*, 113 N.E.2d 865 (Ohio 1953).

14

*See Back*, 113 N.E.2d at 866. The Court ultimately concluded that such instruments bear the earmarks of a license, and recording as such (in the record of leases as opposed to the record of deeds) is sufficient notice to subsequent purchasers. *Id*. at 869.

Appellant first categorizes the 1981 Memorandum of Lease (as well as the 1992 Release) as a license, and then extrapolates the holding in *Back*, which does not remotely involve interpretation of the ODMA passed some 35 years later, to argue that because a "license passes no interest in real estate, a license cannot qualify as a 'title transaction' [under the ODMA]." Appellant's Brief, p. 20. Appellant further summarily concludes that the recent state trial court decisions in *Davis*[5] and *Bender*[6]—both of which ***expressly*** interpreted and applied the ODMA and found oil and gas leases to constitute "title transactions"—are simply wrong under *Back and Wellington Resource Group v. Beck Energy*, 2013 U.S. Dist. LEXIS 134838 (S.D. Ohio, Sept. 20, 2013).[7] Appellant's Brief, pp. 23-25.

At the outset, these exact recorded transactions (as applied to properties in another county) were deemed "savings events" in the form of "title transactions" under the ODMA by a Harrison County Common Pleas court in the *Davis* case in

---

[5] *Davis v. Consolidation Coal Company*, No. CVH-2011-0081 (C.C.P. Harrison County, Aug. 28, 2013).

[6] *Bender v. Morgan*, No. 2012-CV-378 (C.C.P. Columbiana County, March 22, 2013).

[7] As with the *Back* decision, the *Wellington Resources* case did not involve the ODMA.

15

August of 2013.  *Davis*, RE 9-1, Page ID #201-209.[8]    Appellant's proffered bases

for this Court to stray from the *Davis* decision are (1) its alleged inconsistency with

a decision from the United States District Court for the Southern District of Ohio;

(2) whether the question of an oil and gas lease as a "title transaction" was at issue

in *Davis* is unclear; and (3) that it somehow conflicts with the *Back* decision.  As

explained below, Appellant's arguments fail.

Appellant cites the *Back* and *Wellington* cases in support of her contention

that oil and gas leases are not a grant of real property.  Neither case has anything to

with or even tangentially addresses a "***title transaction***" under the ODMA, and

neither case controls the decisions in *Davis* and *Bender*.  As noted above, *Back*

dealt with the recording of certain forms of oil and gas leases.  The "more-recent

Wellington case"[9] dealt with the issue of whether a person engaged in negotiating

the purchase and sale of oil and gas rights falls under the ambit of Ohio's real

estate laws pertaining to the licensure and conduct of *real estate brokers*.  The

court ruled that such persons are not "real estate brokers," citing to, *inter alia*, the

---

[8] It cannot be overstated that the Court in *Davis* was not simply presented the same issues, it was presented the ***same transactions*** at issue here—Consolidation Lease to Republic/LTV, Republic/LTV Assignment to Carless/Kelt Resources, Kelt Resources Release of Oil and Gas Lease back to Consolidation.  *Id.*

[9] The *Wellington* federal court opinion was released 23 days after the *Davis* state court opinion.  Curiously, Appellant failed to direct the District Court, and now has failed to direct *this Court*, to an opinion from the Northern District which was noted in *Wellington* and held the opposite of *Wellington*.  *See Binder v. Trinity OG Land Development and Exploration, LLC*, 2012 WL 1970239 (N.D. Ohio, May 31, 2012).

*Back* decision, other "broker" decisions, and the fact that there was proposed legislation in Ohio "which would give the Chief of the Ohio Division of Oil and Gas Resources Management . . . the authority to regulate 'land professionals'—that is, persons engaged in negotiating business agreements for exploration or development of oil and gas, and negotiating the acquisition of mineral rights for oil and gas." *Id*. at p. 11. The court viewed that proposed legislation as "persuasive evidence that persons engaged in negotiating the purchase and sale of oil and gas rights do not currently fall under the ambit of real estate laws." *Id*.

Thus, the *Wellington* "real estate broker" decision falls well short of mandating a conclusion that the *Back* "recording statute" decision as to certain oil and gas leases somehow (1) controls the interpretation of "***title transaction***" under the ODMA and (2) invalidates the on-point trial court decisions in *Davis* and *Bender* as to the ODMA.

Most fundamentally, however, is Appellant's improper expression of the crux of the issue involved. It is not whether an oil and gas lease is (or is not) a grant of real property ("oil and gas in place"). Instead, the relevant criterion is simply whether oil and gas leases "*affect[] title to any interest in*" *that* real property.[10]

---

[10] The statute includes several examples of "title transactions." The list is not identified as being exclusive, and, in fact, by its plain language, includes "***any transaction*** affecting title to any interest in land."

Of course, when interpreting statutes, courts "must first look to the plain language of the statute itself to determine the legislative intent" and "apply a statute as it is written when its meaning is unambiguous and definite." *Summerville v. Forest Park*, 943 N.E.2d 522, 527 (Ohio 2010). In this manner, the District Court correctly applied the ODMA as written, in accordance with its plain and unambiguous language—"any transaction *affecting* title to any interest in land." (emphasis added). "Affect," in is plainest form, means "[t]o act upon; influence; change; enlarge or abridge." Black's Law Dictionary, 6th Ed., pp. 57. Similarly, "affecting" (in terms of "affecting commerce") is "any activity which touches or concerns" business or industry. *Id.* As the District Court noted, "[i]t is difficult for the Court to conceive of a broader definition than the one chosen by Ohio law. By its plain language, the statute does not require a conveyance or transfer of real property in order to constitute a title transaction. Rather, the statute simply requires a transaction that affects title to any interest in the land. . . . As the lease itself was a title transaction, there can be no dispute that the release of rights under that lease qualifies as a title transaction as well." Memorandum Opinion and Order, RE 19, Page ID # 477.

Appellant's argument would essentially substitute the word "affect" in the ODMA's definition of "title transaction" with "*transfer*." To qualify as a "savings event," the transaction simply needs to *affect* title in the mineral. The Lease, and

18

the Release of that Lease, unquestionably did that.  Between 1981 and 1992, title to the oil and gas (in fee or otherwise) was subject to, *i.e.*, *affected by*, the exclusive right of Republic Steel/LTV, then the exclusive right of Carless/Kelt Resources to exploit the oil and gas.  In 1992, by way of the recorded Release, the right to exploit the oil and gas *reverted* to Consolidation, the predecessor of CNX and record owner of the oil and gas, once again, *affecting* title to that oil and gas.

The *only* case cited by Appellant in support of her contention that "[o]ther Ohio courts have also rejected the contention that an oil and gas lease amounts to a 'title transaction,' for purposes of operating as a Savings Event" (Appellant's Brief, p. 26) is *Shannon v. Householder*, No. 12CV226 (C.C.P. Jefferson County, July 17, 2013) (RE 13-2, Page ID # 263-271).    The following represents the entirety of the trial court's discussion as to this issue:

> Neither the mineral lease to Belden and Blake Corp. nor the Certificate of Transfer  . . . are activities which under the statute prevent the abandonment of said mineral interests.  No activities were ever commenced under said oil and gas lease . . . .

> Further, even had the oil and gas lease (dated March 17, 1978) or the Certificate of Transfer (dated July 12, 1979) been considered as such a title transaction, the twenty year period of inactivity would have run, at the latest, on July 13, 1999, prior to the effective date of the DMA of 2006 and subsequent to the effective date of the DMA of 1989, which, including the three (3) year grace period, is March 22, 1992. Thus, the mineral rights vested in the surface owner on or before July 13, 1999.

19

*Id*. at p. 6.  The trial court cited no authority for these propositions, and arguably based its decision on (1) a non-existent requirement that there be "activities commenced" under the oil and gas lease before it may serve as a savings event and (2) the passage of more than 20 years after the lease.

In the *Bender* case, in stark contrast to the *Shannon* case, the "sole question presented for the Court's determination is whether an oil and gas lease represents a 'title transaction.'"  *See Bender*, p. 3 (emphasis added).  The trial court, citing the definition of "title transaction" under the ODMA and several decisions of the Ohio Supreme Court, concluded that "[g]iven the nature of interest conveyed by an oil and gas lease, the Court finds that such represents a 'title transaction' as defined by law . . . .  The transaction must merely 'affect' the interest.  Clearly, an oil and gas lease is an instrument which affects an interest in such minerals."  *Id*., pp. 3-4.

As to the *Davis* case, the question of whether an oil and gas lease is a "title transaction" was certainly at issue and addressed by the parties. *Davis*, Plaintiff's Motion for Summary Judgment, RE 14-6, Page ID # 392-400;  *Davis*, Consolidation's Memorandum Contra Plaintiff's Motion for Summary Judgment, pp. 13-14, RE 14-7, Page ID # 413-414; *Davis*, Plaintiff's Response to Motion for

20

Summary Judgment, pp. 4-5, RE 14-8, Page ID # 420-421; and *Davis*, Consolidation's Reply, pp. 6-8, RE 14-9, Page ID # 428-430.[11]

Finally, Appellant makes no meaningful argument about the *Release* of the oil and gas Lease. Presumably, Appellant concedes that if the Lease is a "title transaction" under the ODMA, then the *Release* of property from that lease by Kelt Resources in June 1992 is likewise a "title transaction." Indeed it is. Like the Lease, the Release affects title to the mineral. Specifically, whereas under the Lease, the mineral owner could not have the oil and gas developed by anyone other than the lessee, upon the Release of the property, that encumbrance was lifted. Thus, the oil and gas owner's title in the mineral was "affected."

The Release was *recorded* by July 6, 1992. RE 3-6, Page ID # 81-82. Accordingly, the Release was a "title transaction" under the ODMA, which preserved Consolidation's ownership of the oil and gas until July 6, 2012. As described above, ownership of the oil and gas interest was preserved further by

---

[11] Appellant's argument that O.R.C. § 5301.56(B)(3)(b) "would be rendered superfluous" if an oil and gas lease was sufficient to operate as a "savings event" (Appellant's Brief, p. 26) is flatly wrong. In fact, these are simply two (2) of several separate means to achieve a savings event—a title transaction *or* actual production. A lease may have no term or even, as here, a 50-year term. Duration of the lease or the existence of production under the lease is not controlling. It is the lease as a transaction executed within the 20-year period which renders it a savings event, not the fact of the lease. To hold otherwise results in absurdly disparate treatment simply based on the form of the conveyance—an oil and gas owner who conveys the mineral to her husband in fee avoids abandonment under the ODMA, but the oil and gas owner who leases her oil and gas to an operator does not.

Consolidation's conveyance to CNX in 2011 (RE 1-1, Page ID # 26-32), another, *undisputed*, title transaction.

### C. There is no colorable basis for Appellant to claim that she acquired the oil and gas rights at issue through the 1994 tax sale—the record demonstrates that the delinquent taxpayer only owned the surface.

Appellant's acquisition of title to the surface tract at issue by Sheriff's deed recorded May 25, 1994 cannot and did not give Appellant title to the severed oil and gas interest.   Notwithstanding that Appellant cites to ***no*** valid authority which would support an argument that such a transaction would merge severed interests, Appellant's proffered argument is belied by the basic proposition that "one cannot convey that which one does not own" *Smith v. Newell*, 2007 Ohio App. LEXIS 66, *16 (Ohio Ct. App. 2007).   The predecessor-in-interest from which Appellant acquired title to the surface tract (IES) did ***not*** have title to the severed oil and gas interest, and thus, the Sheriff could not have conveyed title to the oil and gas interest to Appellant.

Further, Appellant's argument that CNX had a duty to acquire a tax parcel number for the oil and gas interest is not only inaccurate, but would have no relevance to a later conveyance of any type of the surface tract.  Neither Ohio Rev. Code § 5713.03 nor Ohio Rev. Code § 5713.04 places such a duty on the purchaser of such an interest.  Indeed, the Ohio Attorney General has suggested that such a duty would fall on the county auditor: "where coal, oil, gas and other minerals are

22

reserved and separated from the surface land by a conveyance and so separately held and owned free from the fee of the soil, such interests should be assessed by the auditor in the names of such owners, and are properly taxable as real estate." RE 14-12, Page ID # 437-439.

Nevertheless, the failure to have taxes assessed on the severed mineral rights does not affect the ownership interest in the minerals at all.  In *Yoss v. Markley*, 68 N.E.2d 399, 402 (C.C.P. Tuscarawas County, 1946), the court ruled that "the failure of the owners of mineral rights, after severance from the surface ownership, to cause the same to be listed and to pay taxes thereon, or if taxing officials consider such mineral rights of no taxable value or fail to levy taxes thereon, such situations will not bar the owner of the mineral rights from exercising his rights of ownership." *Yoss*, 68 N.E. 2d at 402.

In *Yoss*, the surface owners were attempting to adversely possess the mineral rights for the minerals underlying their surface tract, and the court ruled that they could not do so, even on the basis that the surface owners were paying taxes for the surface and the owner of the mineral rights were not.  *Yoss*, 68 N.E. 2d at 402  The court stated that the "fact that taxing authorities failed to levy taxes against a separate estate carved out of the same fee, which is a matter of record, will not give any additional property right to the owner of another separate estate in the same fee." *Id*. (emphasis added)(internal citations omitted).

The cases upon which Appellant relies are not remotely on point.  The case of *Howard v. Dor El Realty Co*., 253 N.E.2d 304 (1969) involved joint owners of one surface tract in which one owner failed to pay his proportionate share of taxes, and *Slaughter v. Fitzgerald*, 31 N.E.2d 744 (Ohio Ct. App. 1939) involved a tax sale extinguishing a life estate and the heirs of the owner of the life estate.  Further, *In re National Tube*, 98 N.E. 2d 78 (1950) involved a question of whether blast furnaces and manufacturing equipment were personal property for the purposes of real estate taxation.  None of these cases addresses a situation where there has been a severance of the surface from the mineral interests, while *Yoss*, *supra*, addresses such a situation directly.

Finally, Appellant's reliance on *Slaughter v. Fitzgerald*, 31 N.E.2d 744 (Ohio Ct. App. 1939) is misplaced as the issues therein are wholly inapplicable here.  In *Slaughter*, the dispute involved whether a tax sale extinguished only the existing life estate or also the remainder interests held by the heirs of the owner of the life estate.  The court there ruled that the interests held by the remaindermen were "remote and contingent" and not a "present interest."  *Slaughter*, 31 N.E. at 55, 68.  Accordingly, the tax sale at issue there was held to extinguish those "remote and contingent" future interests in the exact same property under tax delinquency and provided a fee simple to the tax sale purchaser.  The interest at

24

issue in this case was severed some twenty years before the tax sale (which arose by a third party's failure to pay taxes as to the surface estate).

Accordingly, the Appellant's acquisition of the surface estate via tax sale could not, as a matter of law, preclude judgment on the pleadings in favor of CNX as to the oil and gas interests at issue.

### D.    Appellant's October 2010 "attempt" at notice under the 2006 ODMA was irrelevant because of the 1992 "savings event."

According to Plaintiff's Answer to Counterclaim and the documents attached thereto, Appellant "attempted to serve notice of abandonment upon the defendant's predecessor, at its last known address" and later "published [a] notice of abandonment directed to defendant's predecessor, in The Free Press Standard." Plaintiff's Answer to Counterclaim, Paragraphs 35 and 36, RE 5, Page ID # 133. According to Appellant, this is sufficient to demonstrate that Appellant "has alleged a plausible claim for relief under the 2006 version of the [O]DMA." Appellant's Brief, p. 33.

Even accepting these allegations as true, judgment on the pleadings in favor of CNX was proper.

Under the 2006 ODMA, no mineral right will be abandoned if there was a "savings event" in the 20 years preceding the date Notice was served or published. O.R.C. § 5301.56(B)(3).   The oil and gas in this case reverted to Consolidation

25

(CNX's predecessor) through the title transaction recorded on ***July 6, 1992***, which is less than 20 years prior to Appellant's "attempt" at service in October 2010 and publication in November 2010.[12]

## VI.  **CONCLUSION**

The District Court's grant of CNX's Motion for Judgment on the Pleadings required nothing more than a common sense application of the law to the undisputed facts. Appellant was not denied the benefit of any factual inference— the critical facts were not in dispute. Under those undisputed facts, Appellant failed to state a claim as a matter of law.

---

[12] Even without the 1992 title transaction, Appellant's "attempt" at service by publication, on its face, does not comply with ODMA, which requires service by certified mail and only when "service of notice *cannot be completed to any holder*," notice may be made by publication. O.R.C. § 5301.56(E) (emphasis added). Consolidation Coal Company has been registered in the State of Ohio since 1966 and has a designated agent for service, CT Corporation System, 1300 East 9th Street, Cleveland, Ohio 44114, which designation has been effective since October 15, 1998. Ohio Secretary of State, RE 14-11, Page ID #436. Obtaining the appropriate address to complete service of this Notice was as simple as checking the Ohio Secretary of State website.

Accordingly, for the foregoing reasons, the judgment in favor of Appellee, CNX Gas Company, LLC, should be affirmed.

Respectfully submitted,

Dickie, McCamey & Chilcote, P.C.

By: ___/s/ Rodger L. Puz_____
       Rodger L. Pus, Esquire

Two PPG Place, Suite 400
Pittsburgh, PA 15222
412-281-7272-
rpuz@dmclaw.com

Counsel for Defendant-Appellee,
CNX Gas Company, LLC

## <u>CERTIFICATE OF COMPLIANCE</u>

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this Brief contains 6,657 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Word in a 14-point Times New Roman.

<u>s/ Rodger L. Puz</u>      <u>April 23, 2014</u>
(Signature of Counsel)     Date

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 23, 2014, a copy of the foregoing Brief of Appellee was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>s/ Rodger L. Puz</u>
Rodger L. Puz
Dickie, McCamey & Chilcote, P.C.

28

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Nancy M. McLaughlin v. CNX Gas Company, LLC
*U.S. District Court, Northern District of Ohio*
Case No. 5:13-cv-01502

In addition to the filings referenced by Appellant, the following filings from

the District Court's record are relevant documents.

| Date Filed | RE No. | Page ID # Range | Docket Text |
|---|---|---|---|
| 7/18/13 | 3-1 | 57 | Deed (1957 Consolidation) |
| 7/18/13 | 3-2 | 58-62 | Option to Lease (1977) |
| 7/18/13 | 3-3 | 63-38 | Memorandum of Lease |
| 7/18/13 | 3-4 | 69-72 | Deed (1988) |
| 7/18/13 | 3-5 | 73-80 | Limited Warranty Deed (1989) |
| 7/18/13 | 3-6 | 81-82 | Partial Release of Oil/Gas Lease (1992) |
| 7/18/13 | 3-7 | 83-85 | Deed on Decree or Order of Sale (1994) |
| 9/12/13 | 9-1 | 201-209 | *Davis v. Consolidation Coal Co.*(Opinion) |
| 9/30/13 | 13-2 | 263-271 | *Shannon v. Householder* (Opinion) |
| 10/14/13 | 14-3 | 382-389 | Assignment (1985) |
| 10/14/13 | 14-4 | 390 | Name Change (1990) |
| 10/14/13 | 14-6 | 392-400 | *Davis*—Plaintiff's Motion for Summary Judgment |
| 10/14/13 | 14-7 | 413-414 | *Davis*—Consolidation Coal Co.'s Memorandum Contra Plaintiff's Motion for Summary Judgment |
| 10/14/13 | 14-8 | 420-421 | *Davis*—Plaintiff's Response to Motion for Summary Judgment |
| 10/14/13 | 14-9 | 428-430 | *Davis*—Consolidation Coal Co.'s Reply |
| 10/14/13 | 14-11 | 436 | Ohio Secretary of State Corporation Information—Consolidation Coal Co. |
| 10/14/13 | 14-12 | 437-439 | Ohio Attorney General Opinion |